An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

CSA SERVICE CENTER, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Appellant,
vs.
AIR DESIGN SYSTEMS, LLC, A
NEVADA LIMITED LIABILITY
COMPANY; A-1 MECHANICAL, INC., A
NEVADA CORPORATION; LOFTIN
EQUIPMENT; AND JD
CONSTRUCTION, INC.,
Respondents.

No. 57674



FILED

MAY 3 1 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a district court judgment, certified as final under NRCP 54(b), in a construction defect and mechanics' liens case. Eighth Judicial District Court, Clark County; Kathleen E. Delaney, Judge.

In this appeal, we primarily address whether the district court abused its discretion in dismissing, without an evidentiary hearing, appellant CSA Service Center's second amended complaint against respondents and subcontractors Air Design Systems, LLC, and A-1 Mechanical, Inc. CSA asserted construction defect claims against Air Design and A-1 but relied on evidence showing that subsequent contractors altered Air Design's and A-1's allegedly defective work; thus, CSA compromised the evidence for its claims against Air-Design and A-1. When a party engages in abusive litigation practices, a district court has the discretion to impose sanctions, which may include a dismissal of the offending party's complaint. *Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev.

13-16052

88, 92, 787 P.2d 777, 779 (1990). If the sanction is not case concluding, the district court has the discretion to decide whether or not to hold an evidentiary hearing on the abusive litigation practices before imposing the sanction. *Bahena v. Goodyear Tire & Rubber Co. (Bahena I)*, 126 Nev. ___, ___, 235 P.3d 592, 600-01 (2010). Thus, we conclude that the district court did not abuse its discretion in dismissing CSA's second amended complaint against A-1 and Air Design without an evidentiary hearing. These sanctions were not case concluding and were appropriate remedial measures for CSA's inappropriate litigation practices that compromised the evidence.

After considering CSA's issues on appeal, we conclude that in addition to the sanctions against CSA, two other issues warrant discussion, while the remaining issues lack merit. First, CSA contests the district court's order granting A-1's motion in limine barring construction defect evidence at the special master's hearing. Second, CSA challenges the appointment of the special master to determine the lien amounts and adoption of the master's report. We conclude that the district court did not abuse its discretion in granting A-1's motion in limine. It allowed CSA to prove offsets against A-1 before the special master while appropriately barring CSA from proffering construction defect evidence, since CSA had compromised that evidence. Also, we conclude that the district court did not abuse its discretion in appointing the special master to determine the lien amounts because NRS 108.239(7) and NRCP 53(c) permitted this appointment. Nor did it abuse its discretion in adopting the special master's report because, given CSA's failure to object under NRCP 53(e)(2), the district court had the discretion to determine that the report was not clearly erroneous and to adopt it.

*Factual and procedural background*

After being contracted by CSA to improve CSA's properties, a general contractor enlisted the services of A-1, Air Design, and respondent JD Construction, Inc. A-1 retained respondent Loftin Equipment to supply equipment. Suspecting improprieties in the performance of the general contractor's and subcontractor's work, CSA fired the general contractor and did not allow its subcontractors to return to the job site. After not being fully paid for their work, A-1, Air Design, JD, and Loftin filed mechanics' liens against CSA's property.

CSA filed a complaint against the general contractor, and A-1, Air Design, JD, and Loftin filed complaints against CSA to foreclose on their mechanics' liens. CSA amended its initial complaint, adding Air Design and A-1 as defendants and asserting contract and tort-based claims based on allegedly deficient and incomplete work. Ultimately, the district court consolidated the various cases that arose from the parties' claims against each other. The district court bifurcated CSA's claims against the general contractor from the remaining claims by CSA and the other parties and referred the mechanics' lien claimants to a special master to determine the amount and priority of the mechanics' liens.

CSA filed a second amended complaint, asserting contract and tort-based claims against A-1 and Air Design on the basis of construction defects and non-performance. In support of its claims, CSA submitted documents to show the work that subsequent contractors performed in order to remedy the defects.

A-1 filed a motion to dismiss the second amended complaint or, in the alternative, for summary judgment on the basis that CSA engaged in spoliation of the evidence as to A-1's work. A-1 alleged that it

lacked the opportunity to obtain evidence of its allegedly faulty work because CSA prohibited it from returning to the job site and hired contractors to remedy A-1's work. Air Design filed a joinder to A-1's motion to dismiss and submitted an affidavit of CSA's architect, which revealed that subsequent work, including demolition, was performed in the areas where Air Design had allegedly produced faulty work.

After hearings on A-1's and Air Design's motions, the district court determined that spoliation justified a dismissal of CSA's construction defect claims and it granted summary judgment in favor of A-1 and Air Design on all claims that CSA asserted against them in the second amended complaint. As a result, CSA lacked any remaining claims against A-1 and Air Design, but the case continued because there remained the subcontractors' complaints against CSA to foreclose on their mechanics' liens.

Before the special master's hearing on the mechanics' liens against CSA, A-1 filed a motion in limine to exclude testimony by CSA's experts regarding alleged defects and remedial repairs performed upon A-1's work because the district court already found that CSA compromised the construction defect evidence. The district court granted A-1's motion, providing that "construction defect issues should not be heard by . . . [Special Master] Bell and the motion is granted to the extent that it precludes anything dealing with construction defect."

The special master held a hearing with the lien claimants and CSA and determined the amounts owed by CSA. Thereafter, JD, A-1, and Loftin filed motions to adopt the special master's determinations. Air Design filed a joinder to A-1's motion. In the absence of an objection by

CSA to the special master's findings, the district court granted the motions.

After a hearing by the special master determining the priority of the liens, the district court entered a final judgment against CSA on the amount and priority of the mechanics' liens. CSA subsequently appealed.

*The sanctions against CSA for its spoliation of the evidence*

CSA contends that the district court abused its discretion in dismissing CSA's complaints against A-1 and Air Design on the basis of spoliation, arguing that the district court should have held an evidentiary hearing on spoliation of the evidence before doing so. We disagree.

Generally, a district court's discovery sanctions will not be reversed unless there has been an abuse of discretion. *Foster v. Dingwall*, 126 Nev. ___, ___, 227 P.3d 1042, 1048 (2010). If the sanction imposed is that of dismissal with prejudice, a somewhat heightened standard of review applies. *Id.* Generally, NRCP 37 provides for discovery sanctions for a party's willful violation of a discovery order. *Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990). But it is within the district court's "'inherent equitable powers'" to dismiss an action for abusive litigation practices not listed under a statute. *Id.* (quoting *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir. 1987)).

As an exercise of the district court's equitable powers, discovery sanctions must be "just and . . . relate to the claims at issue." *Foster*, 126 Nev. at ___, 227 P.3d at 1048. Dismissal of a party's complaint as a sanction does not need to be "'preceded by other less severe sanctions, [but] it should be imposed only after thoughtful consideration of all the factors involved in a particular case.'" *Bahena v. Goodyear Tire & Rubber Co. (Bahena I)*, 126 Nev. ___, ___, 235 P.3d 592, 598 (2010) (quoting

*Young*, 106 Nev. at 92, 787 P.2d at 780). In considering dismissal as a discovery sanction, the district court may weigh

> "the degree of willfulness of the offending party, the extent to which the non-offending party would be prejudiced by a lesser sanction, the severity of the sanction of dismissal relative to the severity of the discovery abuse, whether any evidence has been irreparably lost, the feasibility and fairness of alternative, less severe sanctions . . . , the policy favoring the adjudication on the merits, whether sanctions unfairly operate to penalize a party for the misconduct of his or her attorney, and the need to deter . . . similar abuses."

*Bahena I*, 126 Nev. at ___, 235 P.3d at 598 (quoting *Young*, 106 Nev. at 93, 787 P.2d at 780). If the dismissal is not a case-concluding sanction, then the district court has the discretion to determine the nature and extent of the hearing that precedes the sanction. *Id.* at ___, 235 P.3d at 600-01. A case-concluding sanction is one that results in the conclusion of the case, the offending party being "out of court," and an appeal being the offending party's only recourse. *Bahena v. Goodyear Tire & Rubber Co. (Bahena II)*, 126 Nev. ___, ___, 245 P.3d 1182, 1186 (2010).

Dismissal is a proper sanction where a plaintiff possesses the evidence at issue but disposes of it before filing a complaint. *See Stubli v. Big D Int'l Trucks, Inc.*, 107 Nev. 309, 313-14, 810 P.2d 785, 787-88 (1991) (providing that dismissal was appropriate in a similar situation where evidence was irreparably lost). Before litigation, a party must preserve items that are "reasonably calculated to lead to the discovery of admissible evidence." *Bass-Davis v. Davis*, 122 Nev. 442, 450, 134 P.3d 103, 108 (2006). A party in control of the evidence is required to preserve it once litigation is reasonably foreseeable. *Id.*

Here, the very evidence that CSA relied upon for its claims revealed its acts of spoliation. CSA submitted a memorandum drafted by a third party that identified deficiencies in A-1's work, and CSA hoped to use this as the basis for its claims, but that very memorandum also revealed that subsequent subcontractors remedied the alleged deficiencies. CSA also submitted work orders and invoices revealing the same. Hence, CSA disposed of the evidence as to A-1's work, such that there was no way for the subcontractors to independently have their work evaluated for defects. Further, much of this remedial work occurred before CSA filed its claims and before A-1 learned of the claims asserted against it; thus, CSA foreclosed A-1's opportunity to gather evidence for its defense.

CSA engaged in similar acts as to Air Design's work. The work orders of subsequent subcontractors showed that CSA compromised the evidence of Air Design's work. A deposition by CSA's architect provided that, after the termination of the initial contract, demolition and repair work occurred in the area where Air Design had worked. Since Air Design did not perform any work after CSA terminated the general contractor, it too was precluded for gathering evidence it could use for its defense.

Adjudicating the construction defect claims would have given CSA the unfair advantage of being the only party who had the opportunity to collect and review evidence of the allegedly defective work. Thus, the district court did not abuse its discretion in dismissing CSA's complaints against A-1 and Air Design as this was the appropriate response to CSA's inappropriate litigation practices.

As the sanctions against CSA did not end the case, the district court did not need to hold an evidentiary hearing on spoliation before

imposing the sanctions. After the imposition of the sanctions against CSA, the case continued because subcontractor's mechanics' liens remained for resolution by the special master and the district court. Moreover, the district court did not entirely deny CSA the chance to rebut the allegations of spoliation before imposing the sanctions. The district court held hearings on A-1's and Air Design's motions; these hearings afforded CSA a chance to contest the allegations of spoliation.

*The order granting A-1's motion in limine*

CSA argues that the district court abused its discretion in granting A-1's motion in limine, contending that the district court improperly excluded an expert's report showing that A-1 did not complete its work. We disagree.

The district court has wide discretion in determining admissible evidence. *State ex rel. Dep't of Highways v. Nev. Aggregates & Asphalt Co.*, 92 Nev. 370, 376, 551 P.2d 1095, 1098 (1976). A motion in limine may be used to exclude or admit evidence. *See* EDCR 2.47.

Here, contrary to CSA's arguments, the district court's order granting A-1's motion in limine did not preclude CSA from presenting evidence of offsets against A-1; the order only barred CSA from using evidence of construction defects. CSA could have presented any other evidence to show that A-1 did not complete its work, including a redacted version of its expert report, so long as the evidence did not pertain to construction defects. Thus, the district court did not abuse its discretion in granting A-1's motion in limine because it allowed CSA to prove offsets

against A-1 while barring construction defect evidence that CSA compromised.[1]

*The appointment of the special master and the adoption of his report*

CSA contends that the district court delegated too much power to the special master and that, because the litigation was so complex, it should not have adopted the special master's report. We disagree.

We review the appointment of a special master for an abuse of discretion. *Russell v. Thompson*, 96 Nev. 830, 835, 619 P.2d 537, 540 (1980). The abuse of discretion standard also applies to the district court's review and adoption of the special master's report. *Venetian Casino Resort, LLC v. Eighth Judicial Dist. Court*, 118 Nev. 124, 132, 41 P.3d 327, 332 (2002).

*The appointment of the special master*

NRS 108.239(7) permits the use of special masters in mechanics' lien cases. It provides, in pertinent part, that "[t]he court shall . . . , by decree, proceed to hear and determine the claims in a summary way, or may, if it be the district court, refer the claims to a special master to ascertain and report upon the liens and the amount justly due thereon." NRS 108.239(7).

---

[1]CSA also contests the order granting JD's motion in limine, which barred CSA from using construction defect evidence at the special master hearing on JD's lien amount. We are unable to address this issue as CSA failed to offer this court a citation to the hearing transcript underlying the order and the order's language. NRAP 28(a)(9) (stating that an appellant must cite to the record upon which it relies); NRAP 30(b)(1) and (3) (requiring an appellant to include all necessary materials, including transcripts, that are necessary for reviewing the issues).

These masters "regulate all proceedings . . . and . . . do all acts and take all measures necessary or proper for the efficient performance of the master's duties under the order." NRCP 53(c). They are appointed when necessary and "in matters of account and of difficult computation of damages . . . upon a showing that some exceptional condition requires it." NRCP 53(b). In lien matters, the special master may only report on the liens and the amount due, whereas the district court determines the lien's validity. *Venetian*, 118 Nev. at 130, 41 P.3d at 330. Further, when the district court reviews the special master's findings and recommendations, it does so under a clearly erroneous standard. *Id.* at 132, 41 P.3d at 331-32; *see also* NRCP 53(e)(2). The district court reviews the conclusions of law de novo. *Venetian*, 118 Nev. at 132, 41 P.3d at 331-32.

Here, the district court assigned a special master to resolve "the calculation, computation of damages, and amount owing, including principal, interest, attorney's fees and lien costs, as to each lien claimant." It also directed the master to determine the liens' priority. The district court did not direct the master to ascertain the liens' validity. Thus, it did not improperly delegate its duties to the special master. *See id.* at 130, 41 P.3d at 330.

CSA concedes that the litigation was a complex civil matter with various parties and claims. These situations are exactly the type where it is proper to use a special master because "litigation involves matters of account that would reach substantial proportions and would potentially consume an inordinate amount of judicial resources." *Id.* at 128, 41 P.3d at 329. Hence, the district court did not abuse its discretion in appointing the special master to determine the amounts due on the mechanics' liens.

*The adoption of the special master's report*

Following the special master's hearing, the master must submit a report to the district court, including findings of fact and conclusions of law. NRCP 53(e)(1). In cases not tried before a jury, "the court shall accept the master's findings of fact unless clearly erroneous." NRCP 53(e)(2). If any party makes an objection within ten days after being served with the master's findings, the district court, "after [a] hearing[,] may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." *Id.*

Here, CSA failed to object to the special master's findings under NRCP 53(e)(2). As a result, the district court considered the special master's report, determined that the report was not clearly erroneous, and adopted it. The record does not include any indication that the report was clearly erroneous. Thus, the district court did not abuse its discretion in adopting the special master's report.[2]

_____

[2]Also, we disagree with CSA's contentions that the district court erred in adopting the special master's report, that NRCP 53(e)(3) only allows for a report to be read to the jury, and that CSA lacked the opportunity to present evidence of any offsets. Although NRCP 53(e)(3) allows for a report to be read to the jury in jury actions, it does not apply in a case with no jury, such as this. Further, there is no right to a jury trial in foreclosure of mechanics' liens. *Close v. Isbell Constr. Co.*, 86 Nev. 524, 529, 471 P.2d 257, 261 (1970) (explaining that a jury may not be claimed in matters of equity and that foreclosure of mechanics' liens is an equity matter). Therefore, although a jury trial may have been requested with regard to CSA's construction defect and/or fraud claims, the mechanics' liens issues were to appropriately be conducted via a bench trial. Also, CSA had the opportunity to present evidence of offsets before

*continued on next page . . .*

*Conclusion*

In light of the above, and since we have considered CSA's remaining contentions and concluded that they lack merit, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Saitta

cc:    Hon. Kathleen E. Delaney, District Judge
Patti, Sgro & Lewis
Hitzke & Associates
Susan Frankewich, Ltd.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP/Las Vegas
Gordon & Rees, LLP
Eighth District Court Clerk

_____

*. . . continued*

the special master; it was only precluded from using construction defect evidence in doing so.